Good morning, Your Honours. May it please the Court. My name is Alex Mashiri. I represent the Plaintiff-Appellant in this matter. Can I have two minutes for rebuttal? The clock is counting down. Thank you, Your Honour. The issue in this case is whether Appellee's Validation Notice violates the FDCPA. To determine whether it did or not, there are three principles that this Court must keep in mind. The first principle is that the FDCPA is a liberal statute, which means that it must be liberally construed in favor of the consumer. Any ambiguity must be resolved in favor of the debtor-consumer. The second principle that the Court must consider is that the Court must apply the least sophisticated debtor standard.  Okay, Your Honour. The third rule is something that the Ninth Circuit hasn't really applied, and that's the rule where an attorney collection letter has to be looked up with close scrutiny. Let's start with the first point you made. Yes, Your Honour. So the letter, May 1, what's ambiguous about it? Well, there are three reasons why that letter violates the FDCPA, Your Honour. On the one hand, it says you have 35 days from the date of the letter to pay, or a lien will be recorded. So the letter was dated May 1, 2013. So in 35 days, what was supposed to happen? Well, payment is supposed to be received, Your Honour. And if payment wasn't received, a lien will be recorded. All right. Okay, that's the first sentence. Yes. All right. What else is ambiguous? What's ambiguous? Okay, so that's pretty clear. Right. So what makes the letter confusing and contradicting is the fact that the least sophisticated letter has 30 days from receiving the letter to dispute the debt. So now the question is, well, if you have 35 days to pay the debt and 30 days from receiving the letter, you know, once you receive the letter and you read the letter, a least sophisticated letter, a letter from an attorney, from a law firm signed by an attorney, you know, do you have to pay the debt? Like, let's say I dispute it. Let's say I'm the least sophisticated letter. I'm below average. I'm sending this, you know, dispute. Well, do I still have to pay the debt? I mean, there's nothing in the letter that says you don't. There's nothing in the letter that says, look, if you dispute the debt, you don't have to pay the debt until we ratify the dispute, we send you a verification. So is there anything in the Fair Debt Collection Practices Act that says that if you dispute, if the debtor disputes the debt or wants confirmation of the debt, that the debt collector must notify the debtor that they will stop collection? Well, Your Honor, there's, if I understand your question correctly, three circuits have addressed, when it comes to a validation notice, three circuits have addressed some sort of transitional language, which means, for example, you know, the Second Circuit, the Seventh Circuit, and then most recently the First Circuit in Pollard. And basically what they said is, look, if you're going to ask, if you're going to demand money within a certain time frame, and at the same time you give the debtor the, you know, the right to verify or ask for verification, you have to have some kind of language informing the debtor that, look, if you're going to dispute the debt, we will not, you know, take legal action until we verify the debt and send the verification to you. That's, it's called, you know, courts have referred to this as a transitional language. And in this letter, Your Honor, I mean, keeping in mind. Your primary concern then is that it says, the first sentence says, 35 days from the date of the letter. Correct, Your Honor. Second sentence says, 30 days from receiving this letter. Correct, Your Honor. Of receiving this letter. After receiving the letter. Yeah. Well, Your Honor, I think they're. Now, the district court went off and said, well, you know, they added 35 days because it takes, you know, you can't trust the Pony Express, you can't trust the Postal Service. Right. But do you see how a debtor can receive a letter? I mean, it's, we don't know when a debtor will receive a letter, right? Well, there's a presumptive rule. And in this case, I guess, isn't there three days or something? Right. And, well, we can do the math here as well. I mean. We know there's two. So, there are three different issues in this case, Your Honor. And I think you guys are focusing on the second reason why the letter violates the FDCPA. Now, the first reason is the fact that it's confusing. Okay. The demand for payment is confusing with the right for validation. Okay. I don't think we really have to go into when the letter was received to determine the first issue. The first issue is pretty much, I mean, you're asking for payment within 35 days. If payment is not received, a lien will be recorded. It's from a law firm signed by an attorney. Three courts have held that attorney letters are, you know, have to be looked at with close scrutiny. At least, you know, the Seventh Circuit said the price of poker has gone up when an attorney gets involved. So, looking at that, looking at that, it's conflicting. I mean, what do you do as a lease officiant? You read this and you say, wow, if I don't pay this within 35 days, I'm going to have a lien against my property. So, what's the point of disputing it? And if I dispute it, what should I do? What do you think a letter should say? Well, I think, Your Honor, if they're going to put the 35-day deadline, this is not a requirement. This is something they chose to do. But if you're going to put a deadline to payment, you should have a transitional language as suggested by the Second Circuit, Seventh Circuit, and most recently the First Circuit. Now, going to the second issue, which is the conflicting deadlines, you have 35 days from the date of the letter. So, that would be May 1st, 35 days from May 1st would have been June 4th. You have to June 4th to pay to that. So, that means that the amount has to be received by June 4th, not sent by June 4th, received by June 4th. Now, what does the lease officiant say? Well, let me use three days or five days, maybe seven days for mailing, just to make sure that the money is received by the collector so that no lien will be recorded. Now, but you have 30 days from receiving the letter. So, let's assume the letter here was received on May 2nd. You know, 30 days from that would be somewhat June 1st, maybe. So, June 1st, and that's the time where the lease officiant can mail it. Now, the Seventh Circuit said that you have the full 30 days to mail the dispute. The part, yeah. The request. I'm sorry? You have 30 days, full 30 days to mail the request. Yes, Your Honor. So, you can wait until the 30th day to send the request. Now, if that's June 1st, and the payment is due by June 4th, and let's assume the lease officiant says, well, let me send the payment five days before the due date to make sure that they receive it because I don't want a lien against my property. That conflicts. I mean, if you really look at it, the time frames conflict. And, you know, there's a reason why the FDCPA allows someone 30 days from receiving the letter because, you know, you never know when the letter is received. You know, just because the Postal Service says three days and two days, it doesn't mean you'll receive it in two or three or four or five days. You might be out of town. You might not receive it. I mean, it's a consumer's protective statute. The third reason, Your Honor, that the letter violates the FDCPA is because it makes a threat that it legally cannot make. Now, I didn't cite a case, a specific case addressing this issue in my briefs, but I do have a case from the Eighth Circuit that addresses this issue. And I would like to know. You're supposed to cite the cases in your briefs. I know, Your Honor. You know, it's a basic rule 101 or brief writing 101. I know. It's an Eighth Circuit case, and it's, you know, it's the Wilhelm v. Credico case. Afterwards, why don't you? Our clerk has some pieces of paper you can write out the name of the case.  Thank you, Your Honor. And I would like to have the written. And give it to opposing counsel. Yes. Oh, sure, Your Honor. I will reserve the rest of my time. Okay. That's fine. Thank you. We'll hear from the other side. Good morning. May it please the Court. My name is Anne Rau, and I'm here on behalf of appellees Epstein, Grinnell, and Howell, and Deborah Zumwalt, sued individually. Could I just ask you a question at the beginning? Our sister circuits have held that attempts to enforce security interests to collect on debts fall under both 1692-G and 1692-E, as well as 1692-F. Why should we hold differently? The answer to that question really rides on, and the cases that have dealt with enforcement of security interests have looked at this in terms of the primary purpose derived from the Fair Debt Collection Practices Act in the definitions. The definitions under FDCPA 15 U.S.C. 1692-A go into the definitions of debt, debt collector. And in those provisions, the language primary purpose becomes important. In all of the cases that have dealt with enforcement of security interests that parse this out, there is examination of the particular correspondence in question, and that becomes important. It ties into this May 1, 2013 letter directly because the primary purpose, the only purpose of that letter was to satisfy California's pre-lien notice requirement. It wasn't to collect a debt? She owed money. She owed, what is it, $385 to the Homeowners Association? Correct, and it was to enforce the security interest that arises out of the CC&Rs. One of the $385, though, right? Beg your pardon? You wanted the money, right? That's what it was all about. If she had paid the money, that would have ended the whole thing. And there is case law to the effect that if the correspondence goes beyond the statutory notice requirements for enforcement of lien rights corresponding to the assessment responsibility, that becomes debt collection. So, in other words, if there were other letters, or even within the body of the May 1 letter, there were efforts to collect the debt that were not expressly required by statute. The only reference to the amount of the debt, it's clear that there was a debt in question, the debt being the assessment. The only reference in there is you were advised that there, let me get the language. This letter is to advise you that $598 is currently owing on your association assessment account. Period. And that is. Sounds like a debt to me. It is a debt. There's no question that this is a debt. Under the Fair Debt Collection Practices Act, you have to show three things to get to violation of a Fair Debt Collection Practices Act. You have to show that they're, that we're dealing with a debt collector who was engaged in collection of a debt and that there was a violation. You have to show those three things. And the circuits that have addressed the enforcement of security interests have addressed it from the perspective of looking at the four corners of the correspondence and whether it has, whether that was the primary purpose was to collect the money or to satisfy the state requirements for enforcement of a security interest, which this was clearly in conformity with California Civil Code Section 5660. It's a pre-lien letter. Every sentence in that letter is expressly required by that statute as notification to a homeowner who is in arrears for assessments. So what do we do with one of the last sentences on the letter? It says, this is a communication from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose. That is because there may be, this is a form letter that is used in connection. Okay, so that letter is the first communication that went to the homeowner, Mashiri, who was in arrears for assessments. Under the Fair Debt Collection Practices Act, we are not taking the position that they're not required to give the validation notice. That was the purpose of the first part of that letter, was to satisfy the requirement of the 30-day validation notice requirement. The 30-day violation, the validation notice is not a grace period. It's not intended to extend the right or to allow the debtor to avoid the implications of the arrears. The effect of being delinquent in a homeowner's association means that there is a lien right that arises out of the assessment obligation. But she does have a right to dispute it. Certainly, and that was the purpose of the letter. She's got 30 days. She has the 30 days. So then what happens with the 35? Doesn't that very possibly confuse and intimidate somebody and prevent them from exercising their rights? Looking at the letter, clearly state law requires any, whether it's the association or a law firm, the language contained in that letter notifies the debtor, or here the homeowner, that there could be a lien recorded against the property. That is a fact, and it's required by state law that disclosure of that fact be reminded 30 days before the lien is recorded. So the Davis-Sterling Act heavily regulates the lien enforcement proceedings, burdens the association with the 30-day notification requirement before a lien can be recorded. Notably, these time periods, and I guess the word complementary was used by the district court, these time periods are not in conflict with one another. There's 35 days from date of receipt, 35 days from the date of the letter to pay, or the association would take further steps as necessary. It says will result in a lien being recorded. If authorized by the Board of Directors. It has to. It just says will. I mean, will result. Will result in a lien being recorded against your property upon authorization of the Board of Directors. The Davis-Sterling Act at Civil Code sections 5660 at SEC go into detail. 5660 governs the requirements of the lien, the pre-lien notice, which is what the May 1st letter was. And 56, and thereafter, at SEC part, you've got a notification. Your pre-lien notice needs to include notification that the debtor can request mediation with the Board, can stop off or closure activities by requesting mediation or an alternative dispute resolution process initiating all of those rights. Every sentence in that letter is required by Civil Code section 5660. But it doesn't say that you can't also put in some clarifying language that would result in less possible confusion since you also have to put in the 30-day notice. And what happens is your opponent said if you don't send the request for proof until the 29th day, then what happens to your 35 days? In that case, the association would have to provide validation. We would have to provide, Epstein, Grinnell, and Howell would have to provide validation of that debt. And how much time is there after that before you put the lien? Six days. There would be six days if they did it on the 29th day. Six days in order to provide that validation. If you received their validation request. Correct. This case really does need to be resolved on the four corners of the pleading here, as well as what can be reasonably alleged. The only way you get into this scenario, the appellant has raised a hypothetical scenario involving a possibility that they would receive it weeks or months, this validation notice would be received weeks or months after the, that's actually in the appellant's opening brief. There's a hypothetical scenario at page 7 of the opening brief threatening a lien. It's confusing because, I'm sorry, not at page 7. We've read the brief. Okay. But there are several hypothetical scenarios suggesting weeks or even months that this letter would be delayed in receipt. This is why we did file a motion to supplement the record with the receipt date, which shows that this was, in fact, received on May 1st. So the idea that this letter needs to be interpreted in some bizarre way under hypothetical scenarios that are not present before the court, is unwarranted. This letter was received May 2nd. So let me ask you this. You know that first sentence? Yes. Where actually does the 35 days come from? That is. Is that in the state statutory scheme, or is that just 35 days that you decided would be reasonable? 5660 requires at least 30 days notice. So you added the five. Correct. Why did you do that? In order to account for additional time to receive the letter. And why the difference in receipt versus the date of the letter? That is pure statute. 5660 requires 30 days notice from the date of the letter,  But nothing requires you to combine these two notices together, correct? No, but that does go to the policies behind the Fair Debt Collection Practices Act and the competing interests of both the debtor and the, in this case, the Homeowners Association. We're talking about assessments. This is the Homeowners Association in question, and that's why I say that it really does, the scrutiny of the letter in question is critical because you have to look not only at what the letter is stating, but also the purpose of the letter. And the association is a fair debt, I mean it's the Association of Nonprofit Mutual Benefit Corporation. It is performing services relating to the maintenance of streets and the buildings that are part of the common area of the association where this property is located. And so the Davis-Sterling Act recognizes the competing interest by placing not only the obligation of the notice, 30-day notice, to protect the consumer, but also allowing for the recording of the lien. The lien process is critical to the association's ability to perform its functions. When the assessment recovery, and it depends on the economy, when you, after the 2008 crisis, the Homeowners Associations were hamstrung in many ways where assessments weren't paid. Let me just clarify, I just want to clarify one point. There's nothing to stop you, though, under the statute, from changing this first sentence to the payment is due within 35 days from receipt of the letter. Just like you added five days, you could change it to receipt, correct? There is a problem with that. Well, what's the problem with that? Let's take the hypothetical scenario that is posited by the appellant, that this letter would be received. But there's nothing in the statute that would prevent that, is there? Yeah, I believe there is, actually. You have to comply with 56-69. Then why did you give five extra days? Because at least it's tied to the date of the letter, which is the critical point. If we had some unknown date that was perhaps two weeks down from the date of the letter, let's say the letter was received May 15th. Under 56-60, the homeowner is entitled to rely on when that lien is going to be recorded. So if a homeowner receives a letter that's dated May 1st, and they receive it on May 15th, and it says from the date the lien would be recorded sometime in mid-June, they could rely on that. But the homeowners association, or in this case Epson, Grinnell, and Howell, has to know when they are entitled to record that lien. What date by which they calendar on their end in order to know when it's okay to go forward with that lien. All right. So the certainty provided by 56-60 is important. Okay. You're over your time. Okay. Thank you very much. Thank you. Your Honor, three points that I would like to address. The first point is that the Third, Fourth, Fifth, and I believe the Sixth Circuit have already concluded that once you fall on a definition of debt collector, the entire act is applicable to you. Four circuit courts that I'm aware of said that. Now, this argument was never raised in the district court, number one. Number two, there is no dispute that the appellates here were debt collectors, so they are entitled, they are subject to the entire act. The Eleventh Circuit addressed this issue with security interests and collecting a debt and security at the same time. And the court in that case, it's really clear that you can do both, but you have to follow the FDCPA and you're subject to the FDCPA. This letter was clearly an attempt to collect the debt. There's nothing else to it. Number two, under civil court section 56-60, it says 30 days before you record a lien. It doesn't say 35 days. It doesn't say 40 days. It says you have to give at least 30 days to record a lien. Now, why can't you just send the validation notice first, send the verification if the consumer disputes it, and then send that notice and say, hey, by the way, we're going to record a lien more than 30 days. Why couldn't you do that? There's nothing preventing you from doing that. They didn't do that. What they did is they included a 35-day deadline that they made up, which conflicts with the 30-day validation notice. Not only conflicts with it, but also confuses the debtor when, you know, looking at the four corners of the collection letter from a lawyer, from a law firm signed by an attorney, which raises the price of poker. Okay. You're over your time now. That's all I have to say. All right. Thank you very much. Thank you, counsel. We appreciate your arguments. Thank you. The matter is submitted.
judges: D.W. Nelson, Paez, Bucklo